**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **NIMA ZAHABI**, | : | |
| 725 Sycamore St., Apt. 203 | : | |
| Columbus, IN 47201 | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 23-cv-1540 |
| v. | : | |
| | : | |
| **GEORGE MASON UNIVERSITY,** | : | |
| 4400 University Drive | : | |
| Fairfax VA 22030 | : | |
| | : | |
| And | : | |
| | : | |
| **DAIGO SHISHIKA,** | : | |
| 12751 Fair Lakes Cir., Apt. #403 | : | |
| Centreville, VA 20120 | : | |
| | : | **TRIAL BY JURY DEMANDED** |
| Defendants. | : | |
| | : | |

## COMPLAINT

**(Violation of Title VI of the Civil Rights Act of 1964 –**
**42 U.S.C. §§ 2000d *et seq.*, Procedural Due Process Violation,**
**Breach of Contract, Tortious Interference with Contract)**

COMES NOW, Nima Zahabi ("Mr. Zahabi," or "Plaintiff"), by and through his

undersigned counsel, and moves this Honorable Court for judgment against Defendants, Goerge

Mason University ("GMU"), and Dr. Daigo Shishika ("Dr. Shishika;" collectively,

"Defendants"), on the grounds and praying for the relief hereinafter set forth:

## Nature of Action

This action arises from discriminatory conduct of GMU and Dr. Shishika against Plaintiff

during his pursuit of a PhD. Plaintiff was enrolled in the Department of Electrical and Computer

1

Engineering ("ECE") after receiving acceptance and financial assistance from GMU to obtain his PhD. Plaintiff performed well as a student, earning a GPA of 3.79 out of 4.0 during his time at GMU. Plaintiff also performed well on tests, passing the Technical Qualifying Exam ("TQE") in January 2021.

However, despite his history of academic excellence, a Committee of three professors at GMU, including Dr. Shishika, failed Plaintiff on his Research Qualifying Exam ("RQE"). Plaintiff attempted to retake or appeal the marks he received on his RQE but was given conflicting information from various faculty members regarding how and even whether he could retake or appeal the marks he received on his RQE. Plaintiff never received a clear answer, but was notified that an appeal of his RQE results had been considered and rejected by GMU ECE Department faculty.

Plaintiff investigated and came to find that, for the first time, he was now being accused of plagiarizing his RQE Research Article. What's more, Plaintiff's advisor, Dr. Shishika, refused to continue advising Plaintiff, resulting in Plaintiff being forced to either transfer to a new PhD or Master's Degree program or be involuntarily expelled from his PhD program. When Plaintiff sought to transfer to a different PhD program, he was hampered due to the conduct of Dr. Shishika, the ECE Department, and GMU collectively. Plaintiff suffered discrimination as a result of his race, color, and national origin from Dr. Shishika, the ECE Department, and GMU, collectively, and was denied due process. Plaintiff seeks redress of his injuries in this Complaint.

**The Parties**

1.      Plaintiff, is, and at all times relevant hereto has been, an individual who is now residing at 725 Sycamore St., Apt. 203, Columbus, IN 47201, with a former residential address of 4026 Chestnut St., Fairfax, VA 22030.

2

2.      Defendant GMU is, and at all times relevant hereto has been, a public institution of higher education, with a principal office located at 4400 University Drive, Fairfax, VA 22030. GMU is an "educational institution[ ]" and "public [body] ... as [a] governmental instrumentalit[y] for the dissemination of education." Va. Code § 23.1-1101 .GMU is managed by a board of visitors whose members are appointed by the Governor. Va. Code §§ 23.1-1500, -1501.

3.      Defendant Dr. Shishika is, and at all times relevant hereto has been, an individual employed by GMU as an academic advisor and an assistant professor in the Department of Mechanical Engineering ("DME") at GMU, who is now residing at 12751 Fair Lakes Cir., Apt. #403, Centreville, VA 20120.

### Jurisdiction and Venue

1. This action arises under the laws of the Commonwealth of Virginia.

2. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as a federal question exists, arising under the laws of the United States.

3. This Court has *in personam* jurisdiction over Defendant GMU in this action pursuant to Fed. R. Civ. P. 4(k)(1)(A) and under Va. Code § 8.01-328.1(A)(1), (2), and (6), in that GMU transacts or transacted business in the Commonwealth, GMU supplies or supplied services and/or things in the Commonwealth, and GMU has or had an interest in and/or uses and/or possesses real property in the Commonwealth.

4. This Court has *in personam* jurisdiction over Defendant Dr. Shishika in this action pursuant to Fed. R. Civ. P. 4(k)(1)(A) and under Va. Code § 8.01-328.1(A)(2) and (3) in that Dr. Shishika supplies or supplied services and/or things in the Commonwealth, and Dr. Shishika caused tortious injury in the Commonwealth.

3

5. Venue is proper in the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1391(b)(1) and (2), and L. Civ. R. 3(B)(1) and (C), because a substantial part of the events or omissions giving rise to the claims set forth in this Verified Complaint occurred in this judicial District and in this division and Defendants are located within this division of this District (specifically, in Fairfax County, Virginia).

## STATEMENT OF FACTS

*Plaintiff's PhD Program and Academic Requirements*

6. In or about the Spring of 2020, Plaintiff commenced a PhD program in Electrical Engineering and Computer Engineering (the "Program") in the Department of Electrical and Computer Engineering ("ECE") at GMU.

7. In January, 2021, Plaintiff passed the Technical Qualifying Exam ("TQE") for his Program.

8. A copy of Plaintiff's acceptance letter is attached hereto and incorporated herein by reference as **Exhibit 1**.

9. Prior to commencing his Program, Plaintiff executed a Graduate Research Assistant ("GRA") contract with effective dates from August 2021 to May 2022.

10. A copy of Plaintiff's GRA contract is attached hereto and incorporated herein by reference as **Exhibit 2**.

11. While a student at GMU, Plaintiff received financial support from GMU every semester, including summer semesters during which he took classes.

12. A copy of Plaintiff's Financial Support Confirmation Letter, sent by GMU, is attached hereto and incorporated herein by reference as **Exhibit 3**.

13. As a public institution, GMU receives Federal financial assistance to fund GMU in a number of different ways, including, *inter alia*, in connection with providing financial support to

4

students such as Plaintiff.

14. As a PhD student, Plaintiff was required to work under an academic advisor in order to complete his studies and receive his degree.

15. Plaintiff's academic advisor was Dr. Shishika, who had significant arbitrary and unilateral control over Plaintiff's progress and ability to complete the PhD Program.

16. A component of Plaintiff's Program entailed submission of a research article (the "Research Article") to the American Control Conference ("ACC")[1].

17. A copy of Plaintiff's Research Article is attached hereto and incorporated herein by reference as **Exhibit 4**.

18. Plaintiff was also required to schedule a Research Qualifying Exam ("RQE") to be completed after submission of his Research Article and which was scheduled for November 15, 2021.

19. Submitting a research article can satisfy three of four criteria for the RQE evaluation process. More specifically, the RQE evaluates four items: (1) foundation, (2) critical thinking, (3) oral communications, and (4) written communications. Acceptance of a PhD student's research article can satisfy criteria 1, 2, and 4.

20. Plaintiff's Research Article, which had been approved by Dr. Shishika, was submitted to the ACC in or about October 2021 and accepted on January 31, 2022.

*The RQE*

21. On November 15, 2021, Plaintiff took his RQE and presented the research article he had previously submitted to the ACC to a collection of committee members of Plaintiff's Program, Dr.

---

[1] Plaintiff wrote two research articles while a student in the Program. The first, *Pursuit and Evasion Games in a Square Region*.

Shishika, Dr. Ningshi Yao ("Dr. Yao"), and Dr. Xuan Wang ("Dr. Wang").

22. Plaintiff walked away from the presentation feeling that he had done a good job and everything had gone well.

23. On November 16, 2023, Plaintiff received a letter from the ECE Department, signed by ECE Chair, Dr. Monson Hayes, ("Dr. Hayes") stating that he had failed the RQE and could not continue his PhD Program studies at GMU any longer. In pertinent part, the letter stated "[a]ccording to ECE Departmental rules, you are allowed only one attempt to pass the [RQE] exam. Therefore, I am afraid that you will not be able to stay in the PhD ECE program and continue your study."

24. A copy of the letter is attached hereto and incorporated herein by reference as **Exhibit 5**.

25. Plaintiff subsequently learned that Dr. Shishika, his advisor, had given him the lowest grade on his RQE out of all of the members of the committee, which Plaintiff found highly unusual. In Plaintiff's experience and that of his friends and colleagues, typically advisors have an added interest in seeing their advisees succeed because it is a reflection of the advisor's tutelage and competence as an advisor.

26. Upon receipt of the letter notifying him that he had failed the RQE, Plaintiff reached out to Jammie Chang ("Ms. Chang"), Academic Program's Manager with the ECE program.

27. Plaintiff informed Ms. Chang of his predicament. In contrast to the representations Dr. Hayes made in his letter, Ms. Chang responded, "you may appeal the RQE decision with ECE Department Chair, Dr. Monson Hayes ("Dr. Hayes"), after discussing with your advisor and coming up with a practical plan as to how you would improve the items you missed earlier in order to meet the committee's expectations.

28. Plaintiff, thereafter, prepared a plan he intended to discuss with Dr. Shishika. Plaintiff contacted Dr. Shishika to schedule a discussion but Dr. Shishika was wholly unresponsive.

29. Due to Dr. Shishika's unresponsiveness, Plaintiff, instead, intended to discuss his plan during his next weekly, recurring meeting with Dr. Shishika, on November 18, 2021. However, Dr. Shishika abruptly cancelled that weekly meeting.

30. Unsure of how to proceed in light of Dr. Shishika's avoidance maneuvers, Plaintiff submitted his plan and request to appeal his case directly to Dr. Hayes on November 18, 2021 in the form of a letter.

31. In his letter, Plaintiff addressed many of the concerns purportedly harbored by the committee when they failed Plaintiff on his RQE performance. One such purported concern was that Plaintiff's Research Article was a couple of pages too long so Plaintiff shortened his Research Article while citing to his full Article within the shortened article.

32. Plaintiff also requested explanations for some of the committee member comments on Plaintiff's RQE, including Dr. Shishika's, Dr. Wang's, and Dr. Yao's "needs improvement" for "critical thinking" and "foundation" comments that were added to Plaintiff's RQE performance report without any further explanation.

33. A copy of Plaintiff's letter to Dr. Hayes is attached hereto and incorporated herein by reference as **Exhibit 6**.

34. On December 2, 2021, Dr. Hayes responded by stating that he was not in a position to consider an appeal of Plaintiff's case, which conflicted with Ms. Chang's representations that Plaintiff could direct an appeal to Dr. Hayes.

35. In his response, Dr. Hayes further stated, "another issue that you need to address is your PhD advisor. If Dr. Shishika is not willing to work with you, then you will need to find another

7

advisor and form a new RQE committee, which may not be an easy thing to do." This suggested to Plaintiff that Dr. Shishika was unwilling to work with Plaintiff for reasons unknown.

36. Dr. Hayes' response to Plaintiff's letter is attached hereto and incorporated herein by reference as **Exhibit 7**.

37. Unsatisfied with Dr. Hayes' response and intent on exhausting all of his options, Plaintiff contacted Jennifer Skorzawski-Ross ("Ms. Skorzawski-Ross"), Senior Director of Graduate Academic Affairs at GMU, and forwarded Dr. Hayes' email to her.

38. Ms. Skorzawski-Ross responded by suggesting that Plaintiff contact Ms. Chang, unaware that Plaintiff had already spoken to her.

39. On December 9, 2021, Plaintiff received an email from the ECE Department, signed by Dr. Hayes, notifying Plaintiff that his appeal request had been denied because "according to ECE Departmental Rules, you are allowed only one attempt to pass the exam."

40. This email shocked Plaintiff because Dr. Hayes had just written to Plaintiff stating that he was not in a position to consider an appeal and Plaintiff wasn't aware that an appeal of his RQE results was being considered in light of Dr. Hayes' most recent correspondence (*See* **Exhibit 7**), Plaintiff wasn't given an opportunity to support his position, aside from the letter to Dr. Hayes requesting an appeal be granted, and Plaintiff was provided no information regarding the criteria that would be evaluated during an appeal.

41. Plaintiff's shock was compounded after he conducted his own comprehensive and thorough review of the ECE rules and discovered that no rule existed which only allowed one attempt to pass the RQE, despite the representations of Dr. Hayes and the rest of the ECE Department.

42. Neither Plaintiff nor any representative of Plaintiff's interests had been present or contacted during any appeal procedure or decision-making process prior to Plaintiff receiving this email. This was the first time Plaintiff learned that an appeal had been considered whatsoever.

43. What's more, the email from the ECE Department, and all other correspondences received by Plaintiff from faculty members failed to address Plaintiff's request for an explanation of why he had failed the RQE in the first place or what the comments provided by Dr. Shishika, Dr. Yao, and Dr. Wang meant and were directed at.

44. The ECE Department email is attached hereto and incorporated herein by reference as **Exhibit 8**.

45. Plaintiff decided to review the letter he previously received, notifying him that he had failed the RQE and could not appeal, again to ensure he had followed the correct procedure for appeal (*See* **Exhibit 5**). After re-reviewing the letter, Plaintiff could find no information in the ECE RQE rules outlining the number of attempts Plaintiff could make at passing the RQE – and, in fact, the absence of such a rule appeared to be acknowledged by Dr. Hayes in his December 2, 2021, email (*See* **Exhibit 7**).

*Dr. Shishika's Discrimination Against Plaintiff*

46. Plaintiff is Iranian, a national origin and culture portrayed negatively in Japan, Dr. Shishika's purported national origin[2]. By way of example, the Japanese book, 'Iranians, These

---

[2] Dr. Shishika "obtained his bachelor's degree from the University of Tokyo, Japan, and his master's and PhD from the University of Maryland, College Park, all in Aerospace Engineering". *See* https://cec.gmu.edu/profiles/dshishik. Dr. Shishika has no known residential history in the United States preceding an address in College Park, Maryland, from August 2012.

Strange People', by Kentaro Endo, gives a false, distorted image of Iran to its Japanese readers.

47. On December 10, 2021, Plaintiff, during the course of a dialogue with Brian Mark ("Dr. Mark"), chair of and professor within the PhD Program who assumes, *inter alia*, some administrative responsibilities, received an email from him stating, "[i]f Dr. Shishika were in support of giving you another chance at the RQE, the decision by the ECE Dept. may have been different, which is why Dr. Hayes posed the question of whether [Dr. Shishika] were willing to continue as your advisor."

48. Not only did this email demonstrate the power Dr. Shishika had over Plaintiff's fate in the Program, it also further undermined Dr. Hayes' representation that students were only permitted one attempt to pass the RQE (*See* **Exhibit 5**).

49. A copy of Dr. Mark's email is attached hereto and incorporated herein by reference as **Exhibit 9**.

50. On December 13, 2021, Plaintiff participated in a Zoom meeting with Dr. Mark to provide a more comprehensive and thorough explanation of Plaintiff's predicament. Dr. Mark expressed surprise when Plaintiff informed him that Dr. Shishika did not raise any issues regarding Plaintiff's academic performance and behavior prior to taking the RQE.

51. He also expressed surprise when Plaintiff informed him that Dr. Shishika had not commented negatively on a second research article Plaintiff had authored and which was later accepted by the IEEE Transactions on Control of Network Systems ("IEEE TCNS")[3].

52. Dr. Mark also informed Plaintiff that Dr. Shishika had stated that the second research article had fundamental technical flaws. Plaintiff, again surprised, asked Dr. Mark in response why

---

[3] This research article was titled "*Nonlinear Opinion Dynamics Models with Stubborn Individuals over Signed Graphs*". Dr. Shishika was a co-author of this article.

Dr. Shishika insisted to be included as an author on the second research article if in fact there were so many purported flaws. Despite multiple, follow-up inquiries, this question was never answered.

53. In light of this information, Dr. Mark stated that he would talk with Dr. Shishika.

54. On December 15, 2021, Dr. Mark emailed Plaintiff stating, "[Dr. Shishika] confirmed again that he does not wish to advise you in the PhD program."

55. Later in the email, Dr. Mark stated, "[g]iven the conversation I had with Dr. Shishika, I suggest that you take some time to consider other potential research groups/advisors that you may be able to work with. As I mentioned, it may be possible to transfer to the PhD in Information Technology program, but you would need to identify another advisor who would be willing to work with you. As mentioned earlier, a stop-gap measure would be to transfer to the MS in EE program."

56. Dr. Mark's email made clear to Plaintiff that Dr. Shishika was unjustifiably and untenably choosing not to be Plaintiff's academic advisor moving forward and that despite representations to the contrary, finding a new advisor might have meant that Plaintiff could remain in his Program.

57. Dr. Mark's email is attached hereto and incorporated herein by reference as **Exhibit 10**.

58. On December 18, 2021 Plaintiff forwarded Dr. Mark's email (*See* **Exhibit 10**) to Ms. Chang and Ms. Skorzawiski-Ross but neither responded.

*Impact on Plaintiff and Next Steps*

59. On December 19, 2022, in large part due to the events of the preceding months and the decisions of the faculty of Plaintiff's Program, especially Dr. Shishika, Plaintiff was admitted to the hospital in relation to the deterioration in his mental health. As of the date of this Complaint, Plaintiff is still taking medication for mental health complications.

60. Throughout the Spring 2022 Semester, Plaintiff worked closely with both the Counseling and Psychological Services Department ("CAPS") and GMU Student Health Services.

61. On January 12, 2022, Plaintiff was set to be involuntarily terminated from enrollment at GMU in the Program unless he transitioned to a different PhD program or a master's degree program on account of Dr. Shishika's unwillingness to work with Plaintiff and the refusal of Program faculty to consider allowing Plaintiff to retake the RQE.

62. Not only was Plaintiff's education impacted, but his ability to continue residing in the United States as an international student on a student visa was at risk.

63. In addition to threatened termination of his status as a PhD student in the Program, Plaintiff's GRA contract was abruptly terminated at the end of the Fall 2021 Semester, well in advance of the contractually agreed upon and binding termination date.

64. While the GRA contract contained no stipulations concerning loss of financial assistance due to RQE results, Plaintiff lost a significant portion of his financial assistance after being notified that he failed the RQE.

*Evaluation of Plaintiff's first Research Article*

65. On January 31, 2022, Plaintiff's first Research Article, previously submitted to the ACC in October 2021, was accepted by the ACC. The reviewers of Plaintiff's Research Article added comments to Plaintiff's Research Article that were in stark contrast to the comments provided by Drs Shishika, Yao, and Wang.

66. The comments represented a significant difference of opinion concerning the quality of Plaintiff's Research Article, whereby the ACC's commenters collectively thought higher of the Research Article than Drs Shishika, Yao, and Wang.

12

67. On February 1, 2022, Plaintiff emailed Drs Mark and Hayes asking them to review the conflicting comments from ACC reviewers and members of their own faculty department.

68. Dr. Mark responded by stating, "[a]ccording to what I understood from talking to Dr. Shishika, the main ideas and theorems in the ACC paper are primarily due to him, as are the proofs of the theorems and most of the writing of the paper. You may disagree with this assessment, but this is consistent with his opinion that you did not understand some of the fundamental concepts in the paper."

69. Dr. Mark's email is attached hereto and incorporated herein by reference as **Exhibit 11**.

70. Plaintiff interpreted this email as an accusation of plagiarism that he was never afforded an opportunity to deny during the purported evaluation of his appeal.

71. Plaintiff did at that time and continues to vehemently deny that he plagiarized any of Dr. Shishika's work or that the Research Article is in any way plagiarized.

72. Plaintiff was the first and main author of the research article, which was first presented by Plaintiff in the Spring of 2021 in a course taught by Dr. Nowzari, entitled ECE 699.

73. Although Dr. Shishika was a guest lecturer in ECE 699, this was the first time Plaintiff had been accused of plagiarizing or improperly using Dr. Shishika's work to compose Plaintiff's Research Article.

74. Plaintiff found the lack of any previous accusation to be peculiar because Plaintiff drafted four different versions of his Research Article and submitted them all to Dr. Shishika prior to Plaintiff's presentation, and although Dr. Shishika commented on Plaintiff's Article, he did not accuse Plaintiff of plagiarizing or of improperly using Dr. Shishika's work to compose it.

75. What's more, Dr. Shishika asked Plaintiff to present his Research Article, that Dr. Shishika was now claiming to be plagiarized, to representatives of the United States Army ("Army").

13

76. Plaintiff highlighted these inconsistencies for Dr. Mark, who responded by claiming, for the first time, that Plaintiff failed his RQE due to deficient performance on the oral part of the exam, not the RQE written exam.

77. Dr. Mark's email is attached hereto and incorporated herein by reference as **Exhibit 12**.

78. Dr. Mark's representation that Plaintiff had failed the oral part of the RQE was contradicted by the fact that Plaintiff received "competent" evaluations of his performance on the oral part of the RQE by all three committee members, including Dr. Shishika.

79. Plaintiff highlighted this contradiction in an email response by highlighting his collective "competent" mark on the oral part of the RQE for Dr. Mark. Thereafter, Dr. Mark became unresponsive.

*Plaintiff's Complaints*

80. On March 7, 2022, consistent with GMU's grievance policy, Plaintiff submitted a complaint (the "Complaint") with supporting documentation to Pallavi Rai Gullo, Director of Graduate Academic and Student Affairs ("Ms. Gullo"), Kenneth Ball ("Dr. Ball"), Dean of the College of Engineering and Computing ("CEC"), the Office of Academic Integrity, and the Office of the President of GMU.

81. A copy of Plaintiff's Complaint is attached hereto and incorporated herein by reference as **Exhibit 13**.

82. On March 29, 2022, Plaintiff received a response from Dr. Gullo stating that "Dr. Bray," the Associate Provost for Graduate Education, responsible for enforcing GMU's grievance policy, was unable to review Plaintiff's Complaint. Plaintiff either did not receive a response from the others or was told that they only investigate complaints against students.

83. During the Spring 2022 Semester, Plaintiff enrolled in a mathematics course, offered by the Math Department at GMU, and performed exceptionally well, placing among the top students in the class.

84. As a result of Plaintiff's performance, he was encouraged by the course instructor to apply for a PhD program within the Math Department. Plaintiff did apply and was admitted to a fully funded PhD program in the Math Department, receiving an admission letter on July 4, 2022.

85. Although this was an exciting prospect for Plaintiff, he harbored reservations due to the way he was treated by his previous PhD Program.

86. Seeking assurances that he would not be treated the same way, Plaintiff emailed Jason McKnight ("Mr. McKnight") on July 5, 2022, inquiring about how similar treatment of Plaintiff might be handled by the Math Department and GMU.

87. Mr. McKnight responded by stating, "technically, what happened in ECE could still happen, and I am working to see how I can prevent that."

88. A copy of Mr. McKnight's statement, identified *supra*, is attached hereto and incorporated herein by reference as **Exhibit 14**

89. Mr. McKnight further commented on Plaintiff's previous Complaint (*See* **Exhibit 13**), stating, "the only point I am trying to make is that your previous request/complaint was not treated as a formal complaint against the faculty and the grievance procedure outlined in the faculty handbook was not engaged."

90. A copy of Mr. McKnight's statement, identified *supra*, is attached hereto and incorporated herein by reference as **Exhibit 15.**

91. Plaintiff interpreted Mr. McKnight's response to mean that Plaintiff could not be protected from similar unjustified treatment, even in a different department of GMU and that his complaint

15

against the ECE faculty had been effectively ignored.

92. On July 25, 2022, Plaintiff submitted a new complaint (the "Second Complaint") to the Office of the Provost, citing violations by ECE faculty of professional ethics, exploitation of power a faculty member may have over other members of the academic community, and failure to carry out professional obligations or assigned responsibilities, in violation of Section 2.9.3 of the Faculty Handbook.

93. Plaintiff's Second Complaint is attached hereto and incorporated herein by reference as **Exhibit 16** and **Exhibit 17**.

94. Plaintiff also filed a complaint (the Bray Complaint") against Dr. Bray, on August 19, 2022, because she failed to act on Plaintiff's previous complaint (*see* **Exhibit 13**) against ECE faculty members.

95. On August 26, 2022, Plaintiff received a response to his Second Complaint and Bray Complaint stating that no grounds were found to support his allegations against the ECE faculty or Dr. Bray.

96. A copy of the response is attached hereto and incorporated herein by reference as **Exhibit 18**.

97. In light of the response to his Second Complaint (s*ee* **Exhibit 16** and **Exhibit 17**), on August 29, 2022, Plaintiff declined admission to the PhD program of the Math Department and CSI Department.

98. Plaintiff was left with three options concerning the Program: (1) resign from the PhD Program and transfer to a Master's Study program; (2) voluntarily resign from the PhD Program, resulting in a notation of "Voluntary Resignation from Academic Program" blemishing his

academic transcript; or (3) be terminated from the Program, resulting in a notation of "Termination from the program" blemishing his academic transcript.

99. Plaintiff completed and received a Master's Degree in Electrical Engineering from GMU on May 26, 2022.

100. After receiving his Master's Degree, Plaintiff sought admission to alternative PhD programs at different educational institutions, including the University of Toronto, ranked 34th nationally by QS University rankings for 2023, and the California Institute of Technology, ranked 6th nationally by QS University rankings for 2023.

101. Lacra Pavel ("Dr. Pavel"), a full-time professor with the Department of Electrical Engineering at the University of Toronto, initially expressed interest in advising Plaintiff as a PhD student.

102. Despite what Plaintiff considered to be a successful interview and in spite of Plaintiff satisfying all the technical requirements for the program, Dr. Pavel was concerned that Plaintiff did not have a letter of recommendation from Dr. Shishika, his previous advisor at GMU.

103. The lack of a letter of recommendation convinced Dr. Pavel that Plaintiff had voluntarily left his Program at GMU and interpreted this as a lack of commitment. Consequently, the University of Toronto denied Plaintiff's application.

104. As of the date of this Complaint, Plaintiff has been unable to secure admission into an alternative PhD program, which is attributable, in large part, to how he was treated by Dr. Shishika and GMU.

105. Plaintiff has, and continues to suffer, significant injury as a result of GMU and Dr. Shishika's conduct.

## CAUSES OF ACTION

### COUNT I
### (Violation of Title VI of the Civil Rights Act of 1964 –
### 42 U.S.C. §§ 2000d *et seq.* and § 1983)
### (As Against GMU)

106. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

107. The Civil Rights Act of 1964 was enacted to ensure the provision of equal rights under the law in a multitude of contexts, including, employment, housing, and education.

108. As a public institution, GMU receives federal financial assistance to fund its programs, to pay its faculty, including Dr. Shishika, and to assist in financing the education of students including Plaintiff.

109. GMU is a "program or activity," within the meaning of Title VI of the Civil Rights Act of 1964 because it is a college, university or public system of higher education, pursuant to 42 U.S.C. § 2000d—4a(2)(A).

110. As an Iranian with darker complexion, Plaintiff is a member of a protected class.

111. Plaintiff was discriminated against by GMU on the basis of his race, color, and national origin, when, *inter alia*, his committee failed him on the RQE without justification.

112. Plaintiff was further discriminated against by GMU on the basis of his race, color, and national origin, when Dr. Shishika, an employee of GMU, refused to continue advising Plaintiff.

113. Plaintiff was further discriminated against by GMU on the basis of his race, color, and national origin, when, *inter alia* he was provided conflicting information concerning his ability to appeal his failing grade on the RQE.

18

114. Plaintiff was further discriminated against by GMU on the basis of his race, color, and national origin, when, *inter alia*, an appeal of his RQE results was held without notifying Plaintiff, without affording Plaintiff an opportunity to prosecute his appeal, and without providing Plaintiff with an opportunity to be present for his appeal.

115. Plaintiff was further discriminated against by GMU on the basis of his race, color, and national origin, when, *inter alia*, he was told by Mr. McKnight that he could be subjected to the same treatment in an alternative PhD program.

116. Each instance of discrimination that Plaintiff was subjected to resulted in the denial the benefits of the programs and activities of GMU, more specifically, the benefits of Plaintiff's ECE Program, and other programs that Plaintiff was admitted into.

117. There is no possible alternative explanation for Plaintiff's treatment, identified *supra*, by GMU, through its agents, other than that Plaintiff was discriminated against on the basis of his race, color, and national origin.

118. As the result of GMU's discriminatory conduct towards Plaintiff, Plaintiff suffered and continues to suffer significant pecuniary damages in an amount no less than $10,000,000.00, for loss of income in relation to Plaintiff's inability to enter into a PhD program free from discrimination, plus attorney fees pursuant to 42 U.S. Code § 1988, taxable costs and interest.

### COUNT II
### (Procedural Due Process Violation)
### (As Against GMU)

119. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

120. Procedural Due Process prohibits the government, or a federally funded entity, from depriving "an individual of a liberty or property interest without providing appropriate procedural protections"—usually in the form of notice and some kind of opportunity to contest the decision.

121. Procedural due process limits the ability of the government to deprive people of interests which constitute 'liberty' or 'property' interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard."

122. As a public institution, GMU receives federal financial assistance to fund its programs, to pay its faculty, including Dr. Shishika, and to assist in financing the education of students including Plaintiff.

123. GMU is a "program or activity," within the meaning of Title VI of the Civil Rights Act of 1964 because it is a college, university or public system of higher education, pursuant to 42 U.S.C. § 2000d—4a(2)(A).

124. GMU is a state actor for purposes of a procedural due process analysis.

125. Plaintiff was deprived of constitutionally protected property and/or liberty interests, pursuant to 42 U.S.C. §§ 2000d and § 1983 when GMU, through its agents, deprived Plaintiff of the opportunity to receive his PhD in the ECE Program on the basis of his race, color, and national origin.

126. Plaintiff was further deprived of procedural due process guarantees when GMU, through its agents, took up and denied Plaintiff's appeal of his failed RQE result without being provided notice that the appeal was to be taken up and without being provided an opportunity to be heard during consideration of Plaintiff's appeal.

127. As the result of GMU's procedural due process violations, Plaintiff suffered and continues to suffer significant pecuniary damages in an amount no less than $10,000,000.00, for loss of income in relation to Plaintiff's inability to enter into a PhD program free from discrimination, plus attorney fees pursuant to 42 U.S. Code § 1988, taxable costs and interest.

**COUNT III**
**(Breach of Contract)**
**(As Against GMU)**

128. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

129. Per GMU AP 6.6 Policy, "The student is responsible for knowing both the termination criteria (including, but not limited to, program time limits and grade requirements) and the process for initiating an academic policy exception request to the dean of their academic unit. In cases of program time limits and grade requirements, the University Registrar will notify the student within two weeks of termination eligibility that the student's performance has reached the threshold for termination, provide notice of the start of the request for exception period, and direct the student to their respective academic unit for information on submitting an academic policy exception request. For all other termination criteria, the academic unit will notify the student within two weeks of termination eligibility that the student's performance has reached the threshold for termination, provide notice of the start of the request for exception period, and direct the student to information on submitting an academic policy exception request.[4]"

130. GMU breached this policy by notifying Plaintiff within two (2) weeks of termination

---

[4] *See* GMU AP 6.6 Policy.

eligibility that his performance had reached the threshold for termination.

131. What's more, Plaintiff did not receive any of the required notices, in breach of the policy.

132. Per the Academic Termination Exception Request Policy and Criteria, "Students submitting a termination policy exception request have 7 calendar days from the first day of notification to appeal to the College of Engineering and Computing."

133. GMU breached this policy and criteria when its agents informed Plaintiff that he could not appeal the RQE decision.

134. As the result of GMU's breaches of its agreements with Plaintiff, Plaintiff suffered and continues to suffer significant pecuniary damages in an amount no less than $10,000,000.00, for loss of income in relation to Plaintiff's inability to enter into a PhD program free from discrimination, plus taxable costs and interest.

## COUNT IV

### (Tortious Interference with Contract)
### (As Against Dr. Shishika)

135. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

136. Plaintiff had valid contractual relationships with GMU as a student in its ECE PhD Program.

137. GMU owed contractual duties to Plaintiff including, *inter alia*, affording Plaintiff certain opportunities to appeal academic decisions made regarding his work and notifying

Plaintiff of impending termination from the Program.

138. Dr. Shishika had a contractual duty to uphold all policies and procedures of GMU in his conduct and interactions with Plaintiff.

139. Dr. Shishika, without lawful justification, discriminated against Plaintiff by choosing to no longer advise him and deliberately assigning failing marks to Plaintiff on his RQE so that he would not have to advise Plaintiff any longer.

140. Dr. Shishika tortiously interfered with Plaintiff's contractual rights under agreements between Plaintiff and GMU so that Dr. Shishika would no longer have to advise Plaintiff.

141. But for Dr. Shishika's conduct, GMU would not have breached its contractual obligations to Plaintiff.

142. As a direct, foreseeable, and proximate result of Dr. Shishika's unlawful conduct, Plaintiff has been injured in that it has suffered, and will continue to suffer, damages in in an amount no less than $10,000,000.00, for loss of income in relation to Plaintiff's inability to enter into a PhD program free from discrimination, plus taxable costs and interest.

143. The aforementioned acts of Dr. Shishika were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

## **DEMAND FOR JURY TRIAL**

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the following relief:

a. Compensatory damages, including economic damages of at least $10,000,000.00, against Defendants, jointly and severally, under applicable counts;

b. Punitive damages against Dr. Shishika in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1, as to Count IV;

c. Attorneys' fees (and/or consideration of such fees in determining punitive damages as to Count IV) and costs of this action, to the extent permitted by law;

d. Injunctive relief to permit Plaintiff to adequately appeal the decision of GMU complained of herein;

e. Pre- and post-judgment interest; and

f. Such other or further relief as this Court deems just and proper.

Date: November 14, 2023,                                      Respectfully submitted,

By: /s/

Robert Powers, Esq. (VSB# 80822)
Tyler M. Roth Esq. (VSB# 93740)
MCCLANAHAN POWERS, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Telephone: (703) 520-1326
Facsimile:  (703) 828-0205
Email: rpowers@mcplegal.com
          troth@mcplegal.com
          mmurawiec@mcplegal.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF TRANSMISSION</u>

I hereby certify that the forgoing COMPLAINT with referenced EXHIBITS is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: November 14, 2023,                    By: /s/_____

                                                    Robert Powers, Esq.
                                                    One of the Attorneys for Plaintiff